E. M. THOMPSON et al. *v.* A. WOMACK et al.—A. WOMACK et al. *v.*
E. M. THOMPSON et al.—Consolidated Cases.

By the common law, which prevails in Mississippi, slaves are regarded as chattels, and as title to
such property may be made by parol,.parol evidence is admissible to establish the gift of a slave
made in that State.

*A. McM.* gave to his daughter *Mary,* for her separate use and benefit, and that of her children, the
slave *Letty,* with the express understanding that she was in no manner to be subject to the debts
of her husband, or to be sold by him. The gift was made in Mississippi, and by parol. The mother
died leaving children, and her husband and grandfather agreed that the slave should be left with
the former for the benefit of her children. The husband married a second time, and having
issue by that marriage also, the question was as to the rights of the two setts of children to the
slave *Letty. Held :* This agreement by *Alexander Thompson,* the husband, with the grandfather
who made the gift, must be viewed in the light of a family settlement and arrangement for the
benefit of the children, which, according to the principles of equity, the father (*Alexander Thomp-
son*) himself, if living, would be estopped by his acts and declarations from disputing ; and al-
though, as to creditors or other subsequent *bona fide* purchasers, it may not have been binding,
we think, in determining the rights of the two setts of children, a court of equity ought to regard
and enforce it.

At common law, although chattels may be conveyed by parol, yet a remainder over in favor of
persons not *in esse* at the time of the delivery to the first taker, could not be created except by
deed, or testament.

Anciently, at common law, there could be no limitation over of a chattel, but a gift for life carried
the absolute interest. But afterwards a distinction was made between *the use* and *the property,*
and it finally became a settled principle that by deed· or will, chattels might be limited to one
person for life with remainder over to another. But this principle never extended farther than
that remainders in chattels might be created by a written instrument.

At common law, neither a remainder over, nor what is technically called a trust estate, could be
created by parol in favor of persons not *in esse* at the time of the gift.

APPEAL from the District Court of the Parish of St. Helena, *Penn,* J.
*E. T. Merrick,* and *Smiley & Perin,* for plaintiffs. *Alfred Hennen,* and
*John Henderson,* for defendants and appellants.

OGDEN, J. (VOORHIES, J., and BUCHANAN, J., absent.) This action was
commenced by *Elizabeth Thompson, Mary A. Thompson,* and *Lydia P. Thomp-
son,* as tutrix of the minor children of *James A. Thompson,* deceased, to reco-
ver a slave woman named *Letty,* and her increase. The plaintiffs are the
children and grandchildren of *Mary McMorris,* who was the first wife of
*Alexander Thompson,* and the defendants are the children of *Alexander
Thompson,* by a second marriage. The defendants instituted a separate suit,
alleging that *Letty* and her increase belonged to their father, *Alexander Thomp-
son,* and claiming a partition to be made equally among the children of both
marriages, not only of the negroes claimed by the plaintiffs, but of other ne-
groes, the increase of *Letty,* already received by the plaintiffs from their father,
*Alexander Thompson.* The suits were consolidated and tried together, and
from a verdict and judgment in favor of the plaintiffs in the first action, the
defendants prosecute this appeal.

Under our laws, there would be no doubt that the children of the first mar-
riage would be entitled to the property in controversy, as the title to the negro
woman *Letty,* was derived by gift to their mother from her father, but the
rights of the parties are to be settled by the laws of Mississippi, where the

71

THOMPSON ET AL
*v.*
WOMACK ET AL.

father and mother of plaintiffs resided when the first marriage was contracted and where the gift was made.

It is necessary, first, to determine the question presented by a bill of exceptions taken on the trial, to the inadmissibility of the testimony of two of the plaintiffs' witnesses, by whom the material facts are established in support of their title. There are numerous objections stated in the bill, but as only two of them have been urged in argument before us, and we see no force in any of them sufficient to reject the testimony, we will only notice those two which are relied on in argument. One is, that the witnesses, *Baxter McMorris*, and *Jane Felder*, were interested in the event of the suit, as coparceners with the plaintiffs, their co-heirs, and as warrantors of the act of their father, *Alexander McMorris*. These witnesses are the brother and the sister of *Mary McMorris*, and they depose to the fact of the gift of the woman *Letty* having been made by *Alexander McMorris* to their sister, in 1822, and of the terms and conditions thereof. It is contended by the appellees, they are interested, because, by the laws of Mississippi, all the property given by the father during his lifetime, to any of his children, must be brought into hotchpot, and that by establishing a title to this property in the plaintiffs, as derived from their grandfather, the witness will be benefited, as the plaintiffs will have to account to them on the settlement of *Alexander McMorris'* estate, for the value of the slave *Letty*. We cannot perceive that the witnesses have any such interest—not being parties to this suit, they can in no manner be affected by any judgment which may be rendered. If *Alexander McMorris* did make an advance to his daughter *Mary*, by gift of the slave *Letty*, as these witnesses depose, it will be taken into account on settlement of *Alexander McMorris'* estate in Mississippi, even if by the judgment of this court, her children should be deprived of the property; and if a settlement of the estate has already been made, charging *Mary McMorris'* heirs with the value of *Letty*, a judgment in this case adverse to the plaintiffs, would establish no right whatever on their part, to seek recourse against the witnesses as warrantors of their title.

The other objection urged to the testimony is, that by the law of the *forum*, parol evidence of the title to a slave cannot be received. The validity and effect of contracts are determined by the law of the place, where they are made. By the common law which prevails in Mississipi, slaves are regarded as chattels, and a title to such property may be made by parol; it follows that parol evidence may be admitted to establish the gift of a slave made in that State. *Thatcher* v. *Walden*, 5 Martin, N. S. 496. *Maduy* v. *Young*, 3 L. R. 162. *Waters* v. *Grayson*, 3 Ann. 595.

By the testimony of these witnesses, it is established that, that the slave *Letty* was given by *Alexander McMorris*, to his daughter, *Mary*, for her separate use and benefit, and that of her children, with the express understanding that she was in no manner to be subject to the debts of her husband, or to be sold by him.

The first question then arises, what was the effect of a gift made on those terms and conditions, according to the laws of Mississippi—did it vest an absolute title, or did it give to the wife only a life estate, and create a limitation of remainders over to her children not then *in esse?* The question has been much discussed at bar, whether at common law, a remainder in chattels can be created by parol. The plaintiffs have cited the case of *Brummet* v. *Barber*, 2d Hill S. C. R. 543, where it was held, that in a gift of personal property, the donor

may verbally create a limitation over either by way of trust, or as a direct <span style="float:right">THOMPSON ET AL <i>v.</i><br>WOMACK ET AL.</span> gift, and the appellees rely on a decision in the State of Georgia, *Kirckpatrick* v. *Davidson*, 2d Kelly's R. 298, in which the reverse of that doctrine was held.

We are of opinion, that at common law, although chattels may be conveyed by parol, yet a remainder over in favor of persons not *in esse* at the time of the delivery to the first taker, could not be created except by deed or testament. It seems from the authorities to which we are referred that, at common law, anciently, there could be no limitation over of a chattel, but that a gift for life carried the absolute interest ; that afterwards, a distinction was made between the *use* and the *property*, and it finally became a settled principle, that by deed or will, chattels might be limited to one person for life, with remainder over to another, but we do not find that the principle ever extended further than that remainders on chattels might be created by a written instrument. The reasoning and authorities referred to in the Georgia decision seem to be conclusive on that point.

The next question is, as to the effect to be given to the testimony of the same witnesses, who declare that after the death of *Mary Thompson*, the mother of plaintiffs, *Alexander McMorris*, the grandfather, left the property with *Alexander Thompson*, for the benefit of the children, and that *Alexander Thompson consented* to the arrangement. If the plaintiffs' title can be supported on legal principles, it can only be by virtue of this arrangement, extended into as these witnesses declare between their father and the grandfather, from whom the gift proceeded, on the death of the mother.

Whether it was the intention of the grandfather, when the gift was originally made, to create an estate tail, or to constitute a trust in favor of the children to be born of the marriage, we are of opinion, that neither a limitation of remainder over, nor what is technically a trust estate, could have been created by parol in favor of persons not *in esse* at the time of the gift. But on the death of the mother, the plaintiffs being then *in esse*, could take by gift directly, either from their father or their grandfather. If we are to consider that the title was vested in the father and that he made the gift to his children on the death of their mother, of property which he considered ought in equity to belong to them, although by law the title was in him, the gift could not be supported, because there was no delivery, and it could at most be regarded as a voluntary executory trust created by the father himself, and which could not be enforced, any more than an ordinary promise to make a gift which, being without any consideration, confers no title as long as the promise remains unexecuted ; but viewed in the light of a gift from the grandfather, in whom the title either still remained at the death of his daughter, or to whom the husband consented to surrender the title on the death of his wife, there is no difficulty in sustaining the gift, as no formal acceptance was necessary on the part of the children, their father consenting to hold the property for them. The witnesses in favor of the plaintiffs declare, that an arrangement was made on the death of the mother, to which arrangement it is sufficiently stated, the father and the grandfather were the parties, and that by that arrangement, the negro woman *Letty* was to be left with the father, *Alexander Thompson*, for the benefit of the children. This arrangement must be regarded either as an acknowledgment by *Alexander Thompson*, that the title remained in *McMorris*, the grandfather, up to the death of Mrs. *Thompson*, or as a surrender of whatever title or interest *Thompson* might have had, to the grandfather, who there-

THOPQSON ET AL
v.
WOMACK ET AL.
upon immediately made a gift of the property to his grandchildren.  There was a meritorious consideration for such an agreement, and the testimony of one the witnesses for the defendants, renders it highly probable that the control and disposition of the property on the death of Mrs. *Thompson*, was considered to be in the grandfather.  *Hardy Thompson*, who married another sister, the daughter of *McMorris*, and who also, on his marriage, received a negro woman, testifies that he asked the consent of *McMorris*, to sell the negress given to his wife.  This agreement by *Alexander Thompson* with the grandfather, who made the gift, must be viewed in the light of a family settlement and arrangement for the benefit of the children, which, according to principles of equity, the father himself, if living, would be estopped by his acts and declarations from disputing, and although as to creditors or subsequent *bona fide* purchasers, it may not have been binding, we think in determining the rights of the two setts of children, a court of equity ought to regard and enforce it.

The verdict of the jury has, we think, done justice between the parties, and we see no sufficient reason to disturb it.

The judgment of the court below is therefore affirmed, with costs.